## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARDIE JOHNSON,<br><br>               Plaintiff,<br><br>   v.<br><br>GRUBHUB INC., BRIAN MCANDREWS, DAVID FISHER, LLOYD FRINK, DAVID HABIGER, LINDA JOHNSON RICE, KATRINA LAKE, GIRISH LAKSHMAN, MATT MALONEY, and KEITH RICHMAN,<br><br>               Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Hardie Johnson ("Plaintiff") by and through Plaintiff's undersigned attorneys, brings this action on behalf of Plaintiff, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Grubhub Inc. ("Grubhub" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Coherent and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Grubhub and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed transaction, pursuant to which Grubhub will be acquired by Just Eat Takeaway.com N.V. ("Parent"), Checkers Merger Sub I, Inc. ("Merger Sub I"), and Checkers Merger Sub II, Inc. ("Merger Sub II," and together with Parent and Merger Sub I, "Just Eat") (the "Proposed Transaction").

2. On June 10, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Just Eat. Pursuant to the terms of the Merger Agreement, Grubhub's stockholders will receive 0.6710 American depository shares ("ADS") of Parent for each share of Grubhub common stock owned (the "Merger Consideration").

3. On April 27, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Grubhub and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Grubhub shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, the owner of Grubhub shares.

9.     Defendant Grubhub is incorporated under the laws of Delaware and has its principal executive offices located at 111 West Washington, Suite 2100, Chicago, IL 60602.  The Company's common stock trades on the New York Stock Exchange under the symbol "GRUB."

10.     Defendant Brian McAndrews ("McAndrews") is and has been the Chairman of the Board of Directors of Grubhub at all times during the relevant time period.

11.     Defendant David Fisher ("Fisher") is and has been a director of Grubhub at all times during the relevant time period.

12.     Defendant Lloyd Frink ("Frink") is and has been a director of Grubhub at all times during the relevant time period.

13.     Defendant David Habiger ("Habiger") is and has been a director of Grubhub at all times during the relevant time period.

14.     Defendant Linda Johnson Rice ("Rice") is and has been a director of Grubhub at all times during the relevant time period.

15.     Defendant Katrina Lake ("Lake") is and has been a director of Grubhub at all times during the relevant time period.

16.     Defendant Girish Lakshman ("Lakshman") is and has been a director of Grubhub at all times during the relevant time period.

17.     Defendant Matt Maloney ("Maloney") is and has been the Chief Executive Officer ("CEO") and a director of Grubhub at all times during the relevant time period.

18.     Defendant Keith Richman ("Richman") is and has been a director of Grubhub at all times during the relevant time period.

19.     Defendants McAndrews, Fisher, Frink, Habiger, Rice, Lake, Lakshman, Maloney and Richman are collectively referred to herein as the "Individual Defendants."

20.     The Individual Defendants, along with Defendant Grubhub, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21.     Grubhub is a leading online and mobile food-ordering and delivery marketplace with the largest and most comprehensive network of restaurant partners, as well as nearly 24 million active diners. Dedicated to connecting diners with the food they love from their favorite

local restaurants, Grubhub elevates food ordering through innovative restaurant technology, easy-to-use platforms and an improved delivery experience. Grubhub features nearly300,000restaurants and is proud to partner with more than 200,000 of these restaurants in over 4,000 U.S. cities. The Grubhub portfolio of brands includes Grubhub, Seamless, LevelUp, AllMenus and MenuPage.

## The Company Announces the Proposed Transaction

22.     On June 10, 2020, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> Just Eat Takeaway.com N.V. (AMS: TKWY, LSE: JET), (the "Company" or "Just Eat Takeaway.com"), and Grubhub Inc. (NYSE: GRUB) ("Grubhub") have entered into a definitive agreement whereby the Company is to acquire 100% of the shares of Grubhub in an all-stock transaction (the "Transaction") to create the world's largest online food delivery company outside of China, measured by Gross Merchandise Value ("GMV") and revenues. The Transaction represents Just Eat Takeaway.com's entry into online food delivery in the United States ("U.S.") and builds on the strategic rationale for its recent merger with Just Eat plc ("Just Eat"). A combined Just Eat Takeaway.com and Grubhub (the "Combined Group") will become the world's largest online food delivery company outside of China1, with strong brands connecting restaurant partners with their customers in 25 countries. The Combined Group will be built around four of the world's largest profit pools in online food delivery: the U.S., the United Kingdom ("U.K."), the Netherlands and Germany, increasing the Combined Group's ability to deploy capital and resources to strengthen its competitive positions in all its markets. The Combined Group has strong leadership positions in almost all countries in which it is present and will become a significant player in North America. Just Eat Takeaway.com owns the leading Canadian business SkipTheDishes. The Combined Group is one of the few profitable players in the space and processed approximately 593 million orders in 2019 with more than 70 million combined active customers globally.
>
> **Key Terms**
>
> •   Under the terms of the Transaction, Grubhub shareholders will be entitled to receive American depositary receipts ("ADRs") representing 0.6710 Just Eat Takeaway.com ordinary shares in exchange for each Grubhub share, representing an implied value of $75.15 for each Grubhub share (based on the undisturbed

closing price of Just Eat Takeaway.com on 9 June 2020 of €98.602) and implying a total equity consideration (on a fully diluted basis) of $7.3 billion.

- Immediately following completion of the Transaction, Grubhub shareholders are expected to own ADRs representing approximately 30.0% of the Combined Group (on a fully diluted basis).
- On completion, Matt Maloney, CEO and founder of Grubhub, will join the Just Eat Takeaway.com Management Board and will lead the Combined Group's businesses across North America and two current Grubhub Directors will join the Just Eat Takeaway.com Supervisory Board.
- The Transaction is subject to the approval of both Just Eat Takeaway.com's and Grubhub's shareholders, as well as other customary completion conditions. Subject to satisfaction of the conditions, completion of the Transaction is anticipated to occur in the first quarter of 2021.
- The Combined Group will be headquartered and domiciled in Amsterdam, the Netherlands, with its North American headquarters in Chicago and a significant presence in the U.K. Just Eat Takeaway.com is listed on Euronext Amsterdam and the Main Market of the London Stock Exchange and will introduce an ADR listing in the U.S.

Both the Managing Board and the Supervisory Board of Just Eat Takeaway.com and the Board of Directors of Grubhub are recommending the Transaction to their respective shareholders. Jitse Groen, CEO and founder of Just Eat Takeaway.com, has entered into a voting and support agreement, and subject to and in accordance with the terms thereof, has committed to vote in favour of the Transaction at the Just Eat Takeaway.com extraordinary general meeting ("EGM").

\*       \*       \*

**Key Terms of the Merger Agreement**

On 10 June 2020, Just Eat Takeaway.com entered into an Agreement and Plan of Merger (the "Merger Agreement"), by and among Just Eat Takeaway.com, Grubhub, Checkers Merger Sub I, Inc. ("Merger Sub I"), a Delaware corporation and a wholly-owned subsidiary of Just Eat Takeaway.com, and Checkers Merger Sub II, Inc. ("Merger Sub II"), a Delaware corporation and a wholly-owned subsidiary of Just Eat Takeaway.com, providing for the acquisition by Just Eat Takeaway.com of all of the issued and outstanding shares of common stock of Grubhub. At the effective time of the Transaction, on the terms and subject to the conditions set forth in the Merger Agreement, each share of common stock of Grubhub will be converted into the right to receive ADRs representing 0.6710 Just Eat Takeaway.com ordinary shares, without interest. Consummation of the Transaction is subject to customary closing conditions, including (i) the required approval of the Merger Agreement by the shareholders of Just Eat Takeaway.com and Grubhub; (ii) completion of any review by U.S. and U.K. antitrust authorities and the Committee on Foreign Investment in the United States (CFIUS); (iii) the absence of any order prohibiting the Transaction; (iv) the accuracy of the

representations and warranties of the parties and compliance by the parties with their respective obligations under the Merger Agreement (subject to customary materiality qualifiers); (v) the absence of any material adverse effect on Just Eat Takeaway.com or Grubhub since the date of the Merger Agreement; and (vi) approval of listing of the Just Eat Takeaway.com ADRs to be issued as the merger consideration on a U.S. stock exchange. Just Eat Takeaway.com and Grubhub have each made customary representations and warranties and covenants in the Merger Agreement. Among other things, each of Just Eat Takeaway.com and Grubhub may not solicit or participate in discussions with third parties regarding alternative acquisition proposals, subject to exceptions that allow each of Just Eat Takeaway.com and Grubhub under certain circumstances to provide information to and participate in discussions with third parties with respect to unsolicited alternative acquisition proposals. In addition, until the termination of the Merger Agreement or the effective time of the Transaction, each of Just Eat Takeaway.com and Grubhub has agreed to use reasonable best efforts to operate its business in the ordinary course of business in all material respects and has agreed to certain other negative covenants. The Merger Agreement contains certain termination rights for Just Eat Takeaway.com and Grubhub. Upon termination of the Merger Agreement under specified circumstances, including if Just Eat Takeaway.com or Grubhub terminates the Merger Agreement in order to accept an alternative acquisition proposal that constitutes a superior proposal or if the board of one party changes its recommendation of the transaction, Just Eat Takeaway.com or Grubhub, as applicable, will be required to pay the other party a termination fee of $144 million. The foregoing description of the Merger Agreement and the transactions contemplated thereby does not purport to be complete and is subject to, and qualified in its entirety by, the full text of the Merger Agreement.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT**

23.     On April 27, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's

shareholders to make informed decisions regarding whether to vote in favor of the Proposed

Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material**
**<u>Misrepresentations or Omissions Regarding the Company's Financial Projections</u>**

25.     The Proxy Statement contains projections prepared by the Company's and Just

Eat's management concerning the Proposed Transaction, but fails to provide material

information concerning such.

26.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can

be inherently misleading, and has therefore heightened its scrutiny of the use of such

projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new

and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs

regarding forward-looking information, such as financial projections, explicitly requires

companies to provide any reconciling metrics that are available without unreasonable efforts.

27.     In order to make management's projections included in the Proxy Statement

materially complete and not misleading, Defendants must provide a reconciliation table of the

non-GAAP measures to the most comparable GAAP measures.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

28.     Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; and (ii) Levered Free Cash Flow.

29.     With respect to Just Eat's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow.

30.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Evercore's Financial Opinion

31.     The Proxy Statement contains the financial analyses and opinion of Evercore Inc. ("Evercore") concerning the Proposed Transaction, but fails to provide material information concerning such.

32.     With respect to Evercore's *Discounted Cash Flow Analysis* for Grubhub, the Proxy Statement fails to disclose: (i) the Company's terminal values; (ii) the inputs and assumptions underlying Evercore's use of the terminal year multiples ranging from 16.0x to 20.0x; (iii) the inputs and assumptions underlying Evercore's use of the range of perpetuity growth rates from 6.8% to 9.2%; (iv) the inputs and assumptions underlying Evercore's use of the range of discount rates from 9.0% to 11.0%; and (v) the number of fully diluted outstanding Grubhub shares.

33.     With respect to Evercore's *Discounted Cash Flow Analysis* for Just Eat, the Proxy Statement also fails to disclose: (i) Just Eat's terminal values; (ii) the inputs and assumptions underlying Evercore's use of terminal year multiples ranging from 12.0x to 14.0x; (iii) the inputs and assumptions underlying Evercore's use of the range of perpetuity growth rates from 2.6% to 5.3%; (iv) the inputs and assumptions underlying Evercore's use of discount rates from 9.0% to 11.0%; and (v) the number of fully diluted outstanding Just Eat shares.

34.     With respect to Evercore's *Premia Paid Analysis*, the Proxy Statement fails to disclose the specific transactions observed in Evercore's analysis, as well as the premiums paid in each.

35.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

36.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

38.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or

omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

42.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

43.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

45.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

46.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of Grubhub within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Grubhub, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the

unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

<h2 align="center">JURY DEMAND</h2>

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 7, 2021                                        Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*